

Rec'd in Corporate Law
JUL 17 2015
Litigation Section B-3

## State of Tennessee

### Department of State

Division of Business Services
Wm. R. Snodgrass Tower
312 Rosa L. Parks Avenue, 6th Floor
Nashville, Tennessee 37243

7/13/2015
Date

70150640000395604862
Certified Number

File No:     18543

Company:     **STATE FARM FIRE AND CASUALTY COMPANY**

Name:

Agent/POE:

Address:     ONE STATE FARM PLAZA
             BLOOMINGTON, IL 61710

Country:

RE:     BOSTON INMAN

VS:     STATE FARM FIRE AND CASUALTY COMPANY, also known as STATE FARM
        INSURANCE

### Notice of Service

The enclosed summons and attachments are hereby officially served upon you by the Office of the Tennessee Secretary of State pursuant to Tennessee Law. Please refer to the summons and attachments for details concerning the lawsuit filed against you. If you have any questions, please contact the clerk of the court which issued the summons. You can obtain the court's telephone number by calling information (area code) 555-1212. The name of the court and county where the court is located will be on the attached summons.

The summons will either tell you a court date and time at which you must appear to defend yourself or tell you the number of days from the day you are served within which you must file an answer upon the plaintiff's attorney. Failure to appear in court at the time specified or failure to answer the summons within the given time could result in a judgement by default being rendered against you for relief sought in the lawsuit.

The Secretary of State's Office cannot give you legal advice. If you need legal advice, please consult a private attorney.

Sincerely,

Tre Hargett
Secretary of State

enclosures
Initial:  SF
CC:

SS-4514 (Rev. 05/15)
RDA 1678

# IN THE CHANCERY COURT FOR CLAIBORNE COUNTY, TENNESSEE
## AT TAZEWELL

BOSTON INMAN )
      **Plaintiff,** )
)
v. )
)
STATE FARM FIRE AND CASUALTY )
COMPANY, also known as STATE FARM )
INSURANCE )
      **Defendants,** )
& )
KATHERINE INMAN, a party joined under )
TRCP Rule 19, )
      Rule 19 Joined Party. )

CASE NO. *18543*

**JURY DEMANDED**

I, Frances Cardwell, Clerk & Master of Claiborne County do hereby certify that the foregoing is a true and perfect copy of *Summons* as same appears of record in my office and that I am the official custodian of such record.
Witness my hand and official seal at office this the _____ day of *July* , 20*15*
*Frances Cardwell*
      Clerk & Master

**SEAL**

**SUMMONS**

## TO THE DEFENDANT: STATE FARM FIRE AND CASUALTY COMPANY
### ONE STATE FARM PLAZA
### BLOOMINGTON, ILLINOIS 61710

You are hereby summoned and required to serve upon Thomas J. Tabor, Jr., Esq., Plaintiff's Attorney, whose address is 1724 Main Street, Suite 3, P.O. Box 941, Tazewell, Tennessee 37879, a true copy of the Complaint which is herewith served upon you, with thirty (30) after service of this summons upon you, exclusive of the day of service. You will file the original pleading with the court. If you fail to do so, judgment by default will be taken against you for the relief demanded in the Petition.

Issued this 7th day of *July* 2015.

Witness *Frances Cardwell Clerk & Mast*(Clerk's Name, Clerk's Title)

*Frances Cardwell*
Clerk

*Rita Jones*
Deputy Clerk

## NOTICE

    Tennessee law provides a ten thousand dollar ($10,000.00) personal property exemption from execution or seizure to satisfy a judgment. If a judgment should be entered against you in this action and you wish to claim property as exempt, you must file a written list, under oath, of the items you wish to claim as exempt with the clerk of the court. The list may be filed at any time and may be changed by you thereafter as necessary: however, unless it is filed before the judgment becomes final; it will not be effective as to any execution of garnishment issued prior to the filing of the list. Certain items are automatically exempt by law and do not need to be listed; these items include the necessary wearing apparel (clothing) for yourself and your family and trunks or other receptacles necessary to contain such apparel, family portraits, the family Bible, and school books. Should any of these items be seized, you would have the right to recover them. If you do not understand your exemption right or how to exercise it, you may wish to seek the counsel of a lawyer. TCA §26-2-114.

**PURSUANT TO RULE 4 OF THE TENNESSEE RULES OF CIVIL PROCEDURE**

**SERVICE INFORMATION**

**TO THE PROCESS SERVER:  DEFENDANT: STATE FARM FIRE AND CASUALTY COMPANY,  ONE STATE FARM PLAZA, BLOOMINGTON, ILLINOIS 61710**

**RETURNED**

I received this summons on the _____ day of _____, 2015

I hereby certify and return that on the _____ day of _____, 2015, I:

( )     served this summons and a complaint on Defendant, _____
_____

In the following manner: _____
_____

( )     failed to serve this summons within 30 days after its issuance because:
_____
_____

_____
Process Server

## IN THE CHANCERY COURT OF CLAIBORNE COUNTY, TENNESSEE
## AT TAZEWELL

| | |
|---|---|
| BOSTON INMAN, | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )    CASE NO. _18543_ |
| | )    JURY DEMANDED |
| STATE FARM FIRE AND CASUALTY | ) |
| COMPANY, also known as STATE FARM | ) |
| INSURANCE, | ) |
|     Defendant, | ) |
| & | ) |
| | ) |
| KATHERINE INMAN, a party joined under | ) |
| TRCP Rule 19, | ) |
|     Rule 19 Joined Party. | ) |

FILED
THIS 7 DAY OF July 20 15
AT 10:25 AM PM
Frances Cardwell, C & M

### COMPLAINT

**COMES NOW,** the Plaintiff Boston Inman, by and through counsel, to bring his cause of

action before this Honorable Court against Defendant State Farm Fire and Casualty Company

(a/k/a State Farm Insurance) for Defendant's failure to pay insurance policy benefits for loss of

property damages the Plaintiff received from a fire at his home. The Plaintiff would assert that

the Defendant State Farm Fire and Casualty Company has materially breached its contract with

the Plaintiff due to the Defendant's failure to pay policy benefits for the Plaintiff's fire loss

damages without good cause under the Defendant's insurance policy. The Defendant State Farm

was obligated to pay for the losses, and has tried to deny the Plaintiff's loss claim based upon

Defendant's false allegations against the Plaintiff. The Plaintiff would show the following to this

Honorable Court:

    1.    The Plaintiff Boston Inman is a resident and citizen of Claiborne County,

1

Tennessee. At all times relevant to this action, the Plaintiff had resided at 865 Cline Road, New Tazewell, Tennessee 37825 until his house burnt up in a fire.

2. The Defendant State Farm Fire and Casualty Company, also known as "State Farm Insurance" (herein collectively known as "Defendant State Farm") is a foreign corporation, doing business in the State of Tennessee as an insurance company, and is subject to out-of-state service of process pursuant to Rule 4 of the Tennessee Rules of Civil Procedure by the Tennessee Secretary of State through its home office located at One State Farm Plaza, Bloomington, Illinois 61710.

3. The Rule 19 joined party Katherine Inman is a resident and citizen of Claiborne County, Tennessee. The Rule 19 joined party can be served pursuant to Rule 4 of the Tennessee Rules of Civil Procedure through her attorney of record, David Stanifer, Esq. 1735 Main Street, P.O. Box 217, Tazewell, TN 37879 by either the Claiborne County, Tennessee Sheriff's Department or by private process server. The Plaintiff would show that Katherine Inman would have to be joined as a necessary and interested party under Rule 19 of the Tennessee Rules of Civil Procedure due to the fact that Ms. Inman is an alleged additional policy holder on policy #42-BF-H751-5d (SEE: Attached Exhibit "D"), and due to the fact that Ms. Inman is a life estate holder of 865 Cline Road, Tazewell, TN 37879 which is subject of a lawsuit styled, Katherine Inman v. Boston Inman, Claiborne County, TN Chancery Court Case No. 18,311. At this time, the Plaintiff does not view Katherine Inman, the Joined Party, as either plaintiff or defendant in his cause of action.

4. The Plaintiff would aver that this Court has subject matter jurisdiction, personal jurisdiction, and proper venue to hear this cause of action.

2

5. On or around the 5th day of January 2014, the Defendant insured the Plaintiff's dwelling house against loss or injury by fire and other perils in a policy of insurance bearing Policy No. 42-BF-H751-5 for the term of One (1) year, which was in effect at the time of said loss. The Plaintiff's house and his personal property was severely damaged by fire on August 29, 2014 of which the Defendant State Farm has had several previous notices.

6. The Plaintiff would show that he has complied with all conditions in cooperating with the Defendant State Farm to the point of having been examined under oath at the requirement of the Defendant, and now the Defendant has denied payment of the Plaintiff's fire loss claim on May 29, 2015 by letter from Michael Wayne Haga, an agent of Defendant State Farm Fire and Casualty. (SEE: Attached Exhibit "A"). In that letter, the Defendant alleges intentional acts and alleges concealment or fraud for reasons of its denial of payment of the Plaintiff's claim to the insurance policy without giving specific details of those acts.

7. Although the Plaintiff has performed all conditions precedent to their right of recovery under said policy of fire insurance, the Defendant has failed and refused to make full payment to the Plaintiff. The failure of the Defendant to pay the Plaintiff is and has been without justification, and the payment has been withheld from the Plaintiff in bad faith, such that the Plaintiff is entitled to recover in addition to the amount of the policy and additional amount equal to twenty-five percent (25%) of the face amount of the policy pursuant to Tennessee Code Annotated § 56-7-105 et. seq.

8. The Plaintiff would show that his contract of insurance, in effect at the time, is attached hereto as Exhibit "B," and "Collective Exhibit C" which is incorporated by reference as set out verbatim.

3

9. Said policy of insurance provided for coverage on the dwelling for One Hundred, Fifteen Thousand and Nine Hundred Dollars ($115,900), coverage on the dwelling extension for Eleven Thousand, Five Hundred and Ninety Dollars ($11,590); and coverage on the personal property for Eighty Six Thousand, Nine Hundred and Twenty-Five Dollars ($86,925.00). The Defendant State Farm has only paid Two Thousand, Five Hundred Dollars ($2,500.00) to the Plaintiff and the Joined Party for temporary accommodations since the loss of the Plaintiff's home on August 29, 2014 at 865 Cline Road, Tazewell, TN 37879.

10. The Plaintiff would aver that that the Defendant State Farm has materially breached its contract with the Plaintiff for failing to pay value on the Policy Number #42-BF-H751-5 and request this Honorable Court to require the Defendant State Farm, general damages, consequential damages, bad faith damages, and expenses for having to file this lawsuit.

**WHEREFORE PREMISES CONSIDERED;** the Plaintiff Boston Inman, would pray this Honorable Court would:

A. **DEMAND** process be issued and served upon the Defendant, requiring them to file an **Appearance** and **Answer** within the time required by law, but not under oath, their oath being waived.

B. **DEMAND** a Jury of Twelve try all issues of this case, and the trial to be held.

C. **GRANT** judgment against the Defendant State Farm Fire and Casualty Company (a/k/a State Farm Insurance) in favor of the Plaintiff due to Defendant's breach of contract, and **AWARD** the Plaintiff the sum of Two Hundred Fourteen Thousand, Four Hundred and Fifteen Dollars ($214,415.00) for fire damages to his home and to his personal property due to fire. **FURTHER, AWARD** an additional Judgment of Fifty Three Thousand, Six Hundred and Three

4

Dollars ($53,603.00) against the Defendant upon the court's finding that the Defendant State Farm's action and conduct was in bad faith for not paying the Plaintiff's claim.

      D.    **ADDITIONALLY AWARD** the Plaintiff with discretionary costs, expenses, court costs, and reasonable attorney's fees paid for by the Defendant State Farm.

      E.    **GRANT** the Plaintiff any other general relief to which he may be entitled under the law and evidence as foreseen by this Honorable Court.

Respectfully submitted this _6th_ day of July 2015.

**BOSTON INMAN**

Thomas J. Tabor Jr., Esq. BPR# 021716
Attorney for the Plaintiff
1724 Main Street, Suite #3
P.O. Box 941
Tazewell, TN 37879
Phone: (423) 626-4423

## VERIFICATION & AFFIDAVIT

I, **BOSTON INMAN**, do solemnly swear that the facts alleged in the forgoing **COMPLAINT**, are true to the best of my knowledge, information, and belief, and that the **COMPLAINT** is not made out of levity or by collusion with the Defendant, but in sincerity and truth for the causes mentioned in the **COMPLAINT**.

**BOSTON INMAN**

| | | |
|---|---|---|
| **STATE OF TENNESSEE** | ) | |
| | ) | **SS** |
| **COUNTY OF CLAIBORNE** | ) | |

Sworn to and subscribed before me this _6th_ day of July 2015.

NOTARY PUBLIC

My commission expires: _11/29/2015_

5

## COST BOND

WE acknowledge ourselves as principal and surety for all court costs in this cause not to exceed Five Hundred Dollars ($500.00).

Boston Inman, Principal
865 Cline Road
New Tazewell, TN 37825

Thomas J. Tabor, Jr., Esq. Surety
1724 Main Street, Suite #3
P.O. Box 941
Tazewell, TN 37879

6



May 29, 2015

Thomas J Tabor Jr. Esq
1723 Main St
Tazewell TN 37879-3447

**State Farm Claims**
P O Box 52258
Phoenix AZ 85072-2258

FILED
THIS 7 DAY OF July, 20 15
AT 10:38 AM/PM
Frances Cardwell, C & M

## CERTIFIED MAIL: RETURN RECEIPT REQUESTED

RE:  Claim Number:        42-517D-779
     Date of Loss:          August 29, 2014
     Our Insured:           Boston Inman
     Policy Number:         42BFH7515
     Your Client(s):        Boston Inman

Mr. Tabor:

State Farm Fire and Casualty Company has concluded our investigation in the claim for
insurance proceeds that your client, Boston Inman, has submitted as a result of the fire damage
to the home located at 865 Cline Road, Tazewell, Tennessee 37879.

This letter will serve as formal notice that his claim is denied and the policy voided based on the
results of our investigation taken in conjunction with the following terms and conditions of the
insurance contract.

HOMEOWNERS POLICY

SECTION I - LOSSES INSURED

COVERAGE A - DWELLING

We insure for accidental direct physical loss to the property described in Coverage A, except as
provided in SECTION I- LOSSES NOT INSURED.

COVERAGE B - PERSONAL PROPERTY

We insure for accidental direct physical loss to property described in Coverage B caused by the
following perils, except as provided in SECTION I - LOSSES NOT INSURED.

SECTION I - CONDITIONS

12.    Intentional Acts. If you or any person insured under this policy causes or procures a loss
to property covered under this policy for the purpose of obtaining insurance benefits, then this
policy is void and we will not pay you or any other insured for this loss.



EXHIBIT "A"

## SECTION I AND SECTION II - CONDITIONS

2.    Concealment or Fraud. This policy is void as to you and any other insured, if you or any other insured under this policy has intentionally concealed or misrepresented any material fact or circumstance relating to this insurance, whether before or after a loss.

State Farm Fire and Casualty Company's investigation into your client's claim revealed he intentionally concealed and/or misrepresented material facts during the course of the investigation. Specifically, he concealed and misrepresented his knowledge of and involvement in this fire, as well as, made other misrepresentations regarding the personal property being claimed. These misrepresentations are material to our investigation of the facts and circumstances surrounding this loss and are a violation of the Concealment or Fraud provision in the Intentional Acts provision of the policy. Additionally, the claim is denied due to loss not being accidental.

As a result of his breach of the CONDITIONS portion of the policy contract, the policy is declared void effective August 29, 2014, and the claim is denied. Our Underwriting Department will be communicating with him in the near future regarding same.

By specifying these reasons for denial and voidance of the policy, State Farm Fire and Casualty Company does not intend to waive, but rather specifically reserves all of its rights, including other defenses which may be applicable to this claim.

Sincerely,

*Michael Wayne Haga*

Michael Wayne Haga
Team Manager
(800) 331-1169 Ext. 2534395028
Fax:    (844) 236-3646

State Farm Fire and Casualty Company

3/2

Customer Name: Inman, Boston
Address: 865 Cline Rd
Tazewell , TN 37879-4626
Policy: 42-BF-H751-5
Location Address: 865 Cline Rd
Tazewell, TN 37879-4626
Status: Active

Company: SF Fire
Servicing agent: Matt Compton
Eff date: 01-05-2014 to 01-05-2015
Description: Homeowners Policy
Years with State Farm: 5
SFPP #: 1224292711

## Fire Policy Information

### Rating Information

Term: Automatic Renewal
Written date: 01-05-2009
Renewal date: 01-05-2015

County: CLAIBORNE
Location Rating: applies
Territory zone: 11
Inside city limits: Yes
Year built: 1985
Home alert: Fire or Smoke Local Alarm, Dead Bolt Locks & Fire Extinguisher

Construction: Frame

### Premium/Billing Information

Amount due: On SFPP

Total premium: 776.00
Previous premium: 921.00

### Coverages

| Code | Description | Limits |
|------|-------------|--------|
| A | Dwelling | 115,900 |
| | Dwelling Extension up to | 11,590 |
| B | Personal Property | 86,925 |
| C | Loss of Use | Actual Loss Sustained |
| L | Personal Liability | 300,000 |
| | (Each Occurrence) | |
| | Damage to Property of Others | 500 |
| M | Medical Payments to Others | 5,000 |
| | (Each Person) | |

### Premium Adjustments

| Description |
|-------------|
| Home/Auto (Multi-line) |
| Claim Record |
| Jewelry and Furs Special Coverage |

### Deductibles

| Type | Percent | Amount |
|------|---------|--------|
| Deductible | M.5 | 1,000 |

### Forms, Options, & Endorsements

| Number | Description |
|--------|-------------|
| FP-7955.KT | Homeowners Policy |

EXHIBIT "B"

handwritten right margin
FILED
THIS 7 DAY OF July 20 15
AT 12:28 AM/PM
Frances Cardwell, C & M

FP-7955 KT
(4/97)

COLLECTIVE "C"
EXHIBIT "C"

C







FP-7955 KT
(4/97)
PRINTED IN U.S.A.

This policy is one of the broadest forms available today, and provides you with outstanding value for your insurance dollars. However, we want to point out that every policy contains limitations and exclusions. Please read your policy carefully, especially "Losses Not Insured" and all exclusions.

# COVER SHEET

This cover sheet provides a convenient summary of the policy provisions.

Your policy, including the endorsements and the attached papers, if any, constitutes a legal contract of insurance between you and us.

READ YOUR POLICY CAREFULLY. This cover sheet provides only a brief outline of some of the important features of your policy. This is not the insurance contract and only the actual policy provisions will control. The policy itself sets forth, in detail, the rights and obligations of both you and your insurance company. IT IS THEREFORE IMPORTANT THAT YOU READ YOUR POLICY.

## INDEX OF MAJOR PROVISIONS

Begins on Page

DECLARATIONS
  Your Name     Policy Period     Limits of Liability     Declarations Page
  Location of Your Residence    Coverages     Deductibles

DECLARATIONS CONTINUED . . . . . . . . . . . . . . . . . . 1

DEFINITIONS . . . . . . . . . . . . . . . . . . . . . . . . 1

SECTION I - YOUR PROPERTY
  COVERAGES . . . . . . . . . . . . . . . . . . . . . . . . 3
    Coverage A - Dwelling . . . . . . . . . . . . . . . . . 3
    Coverage B - Personal Property . . . . . . . . . . . . 3
    Coverage C - Loss of Use . . . . . . . . . . . . . . . 4
    Additional Coverages . . . . . . . . . . . . . . . . . 5
    Inflation Coverage . . . . . . . . . . . . . . . . . . 7
  LOSSES INSURED . . . . . . . . . . . . . . . . . . . . . 7
  LOSSES NOT INSURED . . . . . . . . . . . . . . . . . . . 9
  LOSS SETTLEMENT . . . . . . . . . . . . . . . . . . . . . 11
  CONDITIONS . . . . . . . . . . . . . . . . . . . . . . . 13

SECTION II - YOUR LIABILITY
  COVERAGES . . . . . . . . . . . . . . . . . . . . . . . . 15
    Coverage L - Personal Liability . . . . . . . . . . . . 15
    Coverage M - Medical Payments to Others . . . . . . . . 15
    Additional Coverages . . . . . . . . . . . . . . . . . 15
  EXCLUSIONS . . . . . . . . . . . . . . . . . . . . . . . 16
  CONDITIONS . . . . . . . . . . . . . . . . . . . . . . . 18

SECTION I AND SECTION II - CONDITIONS . . . . . . . . . . . 19

OPTIONAL POLICY PROVISIONS . . . . . . . . . . . . . . . . 20

Includes copyrighted material of State Farm Fire and Casualty Company.
Copyright, State Farm Fire and Casualty Company, 1983.

Printed in U.S.A.

7955 KT
97)

FILED
THIS 7 DAY OF July 20 15
AT 10:08 AM PM
Frances Cardwell, C. & M

COLLECTIVE
EXHIBIT "C"

C₂

# HOMEOWNERS POLICY

## DECLARATIONS CONTINUED

We agree to provide the insurance described in this policy:

1. based on your payment of premium for the coverages you chose;

2. based on your compliance with all applicable provisions of this policy; and

3. in reliance on your statements in these **Declarations**.

You agree, by acceptance of this policy, that:

1. you will pay premiums when due and comply with the provisions of the policy;

2. the statements in these **Declarations** are your statements and are true;

3. we insure you on the basis your statements are true; and

4. this policy contains all of the agreements between you and us and any of our agents.

Unless otherwise indicated in the application, you state that during the three years preceding the time of your application for this insurance your Loss History and Insurance History are as follows:

1. Loss History: you have not had any losses, insured or not; and

2. Insurance History: you have not had any insurer or agency cancel or refuse to issue or renew similar insurance to you or any household member.

## DEFINITIONS

"You" and "your" mean the "named insured" shown in the **Declarations**. Your spouse is included if a resident of your household. "We", "us" and "our" mean the Company shown in the **Declarations**.

Certain words and phrases are defined as follows:

1. "**bodily injury**" means physical injury, sickness, or disease to a person. This includes required care, loss of services and death resulting therefrom.

   **Bodily injury** does not include:

   a. any of the following which are communicable: disease, bacteria, parasite, virus, or other organism, any of which are transmitted by any **insured** to any other person;

   b. the exposure to any such disease, bacteria, parasite, virus, or other organism by any **insured** to any other person; or

   c. emotional distress, mental anguish, humiliation, mental distress, mental injury, or any similar injury unless it arises out of actual physical injury to some person.

2. "**business**" means a trade, profession or occupation. This includes farming.

3. "**Declarations**" means the policy **Declarations**, any amended **Declarations**, the most recent renewal notice or certificate, an Evidence of Insurance form or any endorsement changing any of these.

4. "**insured**" means you and, if residents of your household:

   a. your relatives; and

   b. any other person under the age of 21 who is in the care of a person described above.

   Under Section II, "**insured**" also means:

   c. with respect to animals or watercraft to which this policy applies, the person or organization legally responsible for them. However, the animal or watercraft must be owned by you or a person included in 4.a. or 4.b. A person or organization using or having custody of these animals or watercraft in the course of a **business**, or without permission of the owner, is not an **insured**; and

1/25

FP-7955 KT

Collective Exhibit "C"

d. with respect to any vehicle to which this policy applies, any person while engaged in your employment or the employment of a person included in 4.a. or 4.b.

5. "**insured location**" means:

   a. the **residence premises**;

   b. the part of any other premises, other structures and grounds used by you as a residence. This includes premises, structures and grounds you acquire while this policy is in effect for your use as a residence;

   c. any premises used by you in connection with the premises included in 5.a. or 5.b.;

   d. any part of a premises not owned by an **insured** but where an **insured** is temporarily residing;

   e. land owned by or rented to an **insured** on which a one or two.family dwelling is being constructed as a residence for an **insured**;

   f. individual or family cemetery plots or burial vaults owned by an **insured**;

   g. any part of a premises occasionally rented to an **insured** for other than **business** purposes;

   h. vacant land owned by or rented to an **insured**. This does not include farm land; and

   i. farm land (without buildings), rented or held for rental to others, but not to exceed a total of 500 acres, regardless of the number of locations.

6. "**motor vehicle**", when used in Section II of this policy, means:

   a. a motorized land vehicle designed for travel on public roads or subject to motor vehicle registration. A motorized land vehicle in dead storage on an **insured location** is not a **motor vehicle**;

   b. a trailer or semi-trailer designed for travel on public roads and subject to motor vehicle registration. A boat, camp, home or utility trailer not being towed by or carried on a vehicle included in 6.a., 6.b. or 6.c.;

   c. a motorized golf cart, snowmobile, motorized bicycle, motorized tricycle, all-terrain vehicle or any other similar type equipment owned by an **insured** and designed or used for recreational or utility purposes off public roads, while off an **insured location**. A motorized golf cart while used for golfing purposes is not a **motor vehicle**; and

   d. any vehicle while being towed by or carried on a vehicle included in 6.a., 6.b. or 6.c.

7. "**occurrence**", when used in Section II of.this policy, means an accident, including exposure to conditions, which results in:

   a. **bodily injury**; or

   b. **property damage**;

   during the policy period. Repeated or continuous exposure to the same general conditions is considered to be one **occurrence**.

8. "**property damage**" means physical damage to or destruction of tangible property, including loss of use of this property. Theft or conversion of property by any **insured** is not **property damage**.

9. "**residence employee**" means an employee of an **insured** who performs duties, including household or domestic services, in connection with the maintenance or use of the **residence premises**. This includes employees who perform similar duties elsewhere for you. This does not include employees while performing duties in connection with the **business** of an **insured**.

10. "**residence premises**" means:

    a. the one, two, three or four-family dwelling, other structures and grounds; or

    b. that part of any other building;

    where you reside and which is shown in the **Declarations**.

FP-7955 KT

## COVERAGE A - DWELLING

1. **Dwelling**. We cover the dwelling used principally as a private residence on the **residence premises** shown in the **Declarations**.

   Dwelling includes:

   a. structures attached to the dwelling;

   b. materials and supplies located on or adjacent to the **residence premises** for use in the construction, alteration or repair of the dwelling or other structures on the **residence premises**;

   c. foundation, floor slab and footings supporting the dwelling; and

   d. wall-to-wall carpeting attached to the dwelling.

2. **Dwelling Extension**. We cover other structures on the **residence premises**, separated from the dwelling by clear space. Structures connected to the dwelling by only a fence, utility line, or similar connection are considered to be other structures.

   We do not cover other structures:

   a. not permanently attached to or otherwise forming a part of the realty;

   b. used in whole or in part for **business** purposes; or

   c. rented or held for rental to a person not a tenant of the dwelling, unless used solely as a private garage.

3. **Property Not Covered**. We do not cover:

   a. land, including the land necessary to support any Coverage A property;

   b. any costs required to replace, rebuild, stabilize, or otherwise restore the land; or

   c. the costs of repair techniques designed to compensate for or prevent land instability to any property, whether or not insured under Coverage A.

## COVERAGE B - PERSONAL PROPERTY

1. **Property Covered**. We cover personal property owned or used by an **insured** while it is anywhere in the world. This includes structures not permanently attached to or

otherwise forming a part of the realty. At your request, we will cover personal property owned by others while the property is on the part of the **residence premises** occupied exclusively by an **insured**. At your request, we will also cover personal property owned by a guest or a **residence employee**, while the property is in any other residence occupied by an **insured**.

We cover personal property usually situated at an **insured's** residence, other than the **residence premises**, for up to $1,000 or 10% of the Coverage B limit, whichever is greater. This limitation does not apply to personal property in a newly acquired principal residence for the first 30 days after you start moving the property there. If the **residence premises** is a newly acquired principal residence, personal property in your immediate past principal residence is not subject to this limitation for the first 30 days after the inception of this policy.

**Special Limits of Liability**. These limits do not increase the Coverage B limit. The special limit for each of the following categories is the total limit for each loss for all property in that category:

a. $200 on money, coins and medals, including any of these that are a part of a collection, and bank notes;

b. $1,000 on property used or intended for use in a **business**, including merchandise held as samples or for sale or for delivery after sale, while on the **residence premises**. This coverage is limited to $250 on such property away from the **residence premises**.

Electronic data processing system equipment or the recording or storage media used with that equipment is not included under this coverage;

c. $1,000 on securities, checks, cashier's checks, traveler's checks, money orders and other negotiable instruments, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, passports and tickets;

d. $1,000 on watercraft of all types and outboard motors, including their trailers, furnishings and equipment;

e. $1,000 on trailers not used with watercraft;

3/25

FP-7955 KT

f. $2,500 on stamps, trading cards and comic books, including any of these that are a part of a collection;

g. $2,500 for loss by theft of firearms;

h. $2,500 for loss by theft of silverware and goldware;

i. $5,000 on electronic data processing system equipment and the recording or storage media used with that equipment. There is no coverage for said equipment or media while located away from the **residence premises** except when said equipment or media are removed from the **residence premises** for the purpose of repair, servicing or temporary use. An **insured** student's equipment and media are covered while at a residence away from home; and

j. $5,000 on any one article and $10,000 in the aggregate for loss by theft of any rug, carpet (except wall-to-wall carpet), tapestry, wall-hanging or other similar article.

2. **Property Not Covered.** We do not cover:

a. articles separately described and specifically insured in this or any other insurance;

b. animals, birds or fish;

c. any engine or motor propelled vehicle or machine, including the parts, designed for movement on land. We do cover those not licensed for use on public highways which are:

(1) used solely to service the **insured location**; or

(2) designed for assisting the handicapped;

d. devices or instruments for the recording or reproduction of sound permanently attached to an engine or motor propelled vehicle. We do not cover tapes, wires, records or other mediums that may be used with these devices or instruments while in the vehicle;

e. aircraft and parts;

f. property of roomers, boarders, tenants and other residents not related to an **insured**. We do cover property of roomers, boarders and other residents related to an **insured**;

g. property regularly rented or held for rental to others by an **insured**. This exclusion does not apply to

property of an **insured** in a sleeping room rented to others by an **insured**;

h. property rented or held for rental to others away from the **residence premises**;

i. any citizens band radios, radio telephones, radio transceivers, radio transmitters, radar or laser detectors, antennas and other similar equipment permanently attached to an engine or motor propelled vehicle;

j. books of account, abstracts, drawings, card index systems and other records. This exclusion does not apply to any recording or storage media for electronic data processing. We will cover the cost of blank books, cards or other blank material plus the cost of labor you incur for transcribing or copying such records; or

k. recording or storage media for electronic data processing that cannot be replaced with other of like kind and quality on the current retail market.

## COVERAGE C - LOSS OF USE

1. **Additional Living Expense.** When a Loss Insured causes the **residence premises** to become uninhabitable, we will cover the necessary increase in cost you incur to maintain your standard of living for up to 24 months. Our payment is limited to incurred costs for the shortest of: (a) the time required to repair or replace the premises; (b) the time required for your household to settle elsewhere; or (c) 24 months. This coverage is not reduced by the expiration of this policy.

2. **Fair Rental Value.** When a Loss Insured causes that part of the **residence premises** rented to others or held for rental by you to become uninhabitable, we will cover its fair rental value. Payment shall be for the shortest time required to repair or replace the part of the premises rented or held for rental, but not to exceed 12 months. This period of time is not limited by expiration of this policy. Fair rental value shall not include any expense that does not continue while that part of the **residence premises** rented or held for rental is uninhabitable.

3. **Prohibited Use.** When a civil authority prohibits your use of the **residence premises** because of direct damage to a neighboring premises by a Loss Insured, we will cover any resulting Additional Living Expense and Fair Rental

4/25

FP-7955 KT

while use is prohibited.

We do not cover loss or expense due to cancellation of a lease or agreement.

## SECTION I - ADDITIONAL COVERAGES

The following Additional Coverages are subject to all the terms, provisions, exclusions and conditions of this policy.

1. **Debris Removal.** We will pay the reasonable expenses you incur in the removal of debris of covered property damaged by a Loss Insured. This expense is included in the limit applying to the damaged property.

   When the amount payable for the property damage plus the debris removal exceeds the limit for the damaged property, an additional 5% of that limit is available for debris removal expense. This additional amount of insurance does not apply to Additional Coverage, item 3. Trees, Shrubs and Other Plants.

   We will also pay up to $500 in the aggregate for each loss to cover the reasonable expenses you incur in the removal of tree debris from the **residence premises** when the tree has caused a Loss Insured to Coverage A property.

2. **Temporary Repairs.** If damage is caused by a Loss Insured, we will pay the reasonable and necessary cost you incur for temporary repairs to covered property to protect the property from further immediate damage or loss. This coverage does not increase the limit applying to the property being repaired.

3. **Trees, Shrubs and Other Plants.** We cover outdoor trees, shrubs, plants or lawns, on the **residence premises**, for direct loss caused by the following: Fire or lightning, Explosion, Riot or civil commotion, Aircraft, Vehicles (not owned or operated by a resident of the **residence premises**), Vandalism or malicious mischief or Theft.

   The limit for this coverage, including the removal of debris, shall not exceed 5% of the amount shown in the **Declarations** for COVERAGE A - DWELLING. We will not pay more than $500 for any one outdoor tree, shrub or plant, including debris removal expense. This coverage may increase the limit otherwise applicable. We do not cover property grown for **business** purposes.

4. **Fire Department Service Charge.** We will pay up to $500 for your liability assumed by contract or agreement for fire department charges. This means charges incurred when the fire department is called to save or protect covered property from a Loss Insured. No deductible applies to this coverage. This coverage may increase the limit otherwise applicable.

5. **Property Removed.** Covered property, while being removed from a premises endangered by a Loss Insured, is covered for any accidental direct physical loss. This coverage also applies to the property for up to 30 days while removed. We will also pay for reasonable expenses incurred by you for the removal and return of the covered property. This coverage does not increase the limit applying to the property being removed.

6. **Credit Card, Bank Fund Transfer Card, Forgery and Counterfeit Money.**

   a. We will pay up to $1,000 for:

      (1) the legal obligation of an **insured** to pay because of the theft or unauthorized use of credit cards and bank fund transfer cards issued to or registered in an **insured's** name. If an **insured** has not complied with all terms and conditions under which the cards are issued, we do not cover use by an **insured** or anyone else;

      (2) loss to an **insured** caused by forgery or alteration of any check or negotiable instrument; and

      (3) loss to an **insured** through acceptance in good faith of counterfeit United States or Canadian paper currency.

      No deductible applies to this coverage.

      We will not pay more than the limit stated above for forgery or alteration committed by any one person. This limit applies when the forgery or alteration involves one or more instruments in the same loss.

   b. We do not cover loss arising out of **business** pursuits or dishonesty of an **insured**.

   c. Defense:

      (1) We may make any investigation and settle any claim or suit that we decide is appropriate. Our obligation to defend claims or suits ends when

the amount we pa[y] liability.

      (2) If claim is mad[e] **insured** for liabili[ty] Fund Transfer Ca[rd] defense. This defe[n]sel of our choice.

      (3) We have the optio[n] **insured** or an **ins**[ured] for the enforceme[nt] gery coverage.

7. **Power Interruption.** We c[over] loss caused directly or indir[ectly] ture which results from p[ower] place on the **residence pr**[emises] tion must be caused by a L[oss Insured] **residence premises.** The **premises** must remain en[ergized] not increase the limit apply[ing]

8. **Refrigerated Products.** C[over] cover the contents of deep f[reeze] the **residence premises** fo[r] mechanical failure. If mech[anical failure] is known to you, all reasona[ble steps to] protect the property insure[d]. coverage is void. Power failu[re does] not include:

   a. removal of a plug from a[n]

   b. turning off an electrical Loss Insured.

   This coverage does not incre[ase the limit on the] damaged property.

9. **Arson Reward.** We will pay $[... which] leads to an arson conviction i[n ... damage] to property covered by this [policy ... does not] increase the limit otherwise [... This] $1,000 limit shall not be in[creased ... the] number of persons providing [... ]

10. **Volcanic Action.** We cover[... to a] covered building or covere[d ... the] building resulting from the er[uption ... if the] loss is directly and immediate[ly ... ]

/25

FP-7955 KT

the amount we pay for the loss equals our limit of liability:

(2) If claim is made or a suit is brought against an **insured** for liability under the Credit Card or Bank Fund Transfer Card coverage, we will provide a defense. This defense is at our expense by counsel of our choice.

(3) We have the option to defend at our expense an **insured** or an **insured's** bank against any suit for the enforcement of payment under the Forgery coverage.

7. **Power Interruption.** We cover accidental direct physical loss caused directly or indirectly by a change of temperature which results from power interruption that takes place on the **residence premises**. The power interruption must be caused by a Loss Insured occurring on the **residence premises**. The power lines off the **residence premises** must remain energized. This coverage does not increase the limit applying to the damaged property.

8. **Refrigerated Products.** Coverage B is extended to cover the contents of deep freeze or refrigerated units on the **residence premises** for loss due to power failure or mechanical failure. If mechanical failure or power failure is known to you, all reasonable means must be used to protect the property insured from further damage or this coverage is void. Power failure or mechanical failure shall not include:

a. removal of a plug from an electrical outlet; or

b. turning off an electrical switch unless caused by a Loss Insured.

This coverage does not increase the limit applying to the damaged property.

9. **Arson Reward.** We will pay $1,000 for information which leads to an arson conviction in connection with a fire loss to property covered by this policy. This coverage may increase the limit otherwise applicable. However, the $1,000 limit shall not be increased regardless of the number of persons providing information.

10. **Volcanic Action.** We cover direct physical loss to a covered building or covered property contained in a building resulting from the eruption of a volcano when the loss is directly and immediately caused by:

a. volcanic blast or airborne shock waves;

b. ash, dust or particulate matter; or

c. lava flow.

We will also pay for the removal of that ash, dust or particulate matter which has caused direct physical loss to a covered building or covered property contained in a building.

One or more volcanic eruptions that occur within a 72-hour period shall be considered one volcanic eruption.

This coverage does not increase the limit applying to the damaged property.

11. **Collapse.** We insure only for direct physical loss to covered property involving the sudden, entire collapse of a building or any part of a building.

Collapse means actually fallen down or fallen into pieces. It does not include settling, cracking, shrinking, bulging, expansion, sagging or bowing.

The collapse must be directly and immediately caused only by one or more of the following:

a. perils described in **SECTION I - LOSSES INSURED, COVERAGE B - PERSONAL PROPERTY.** These perils apply to covered building and personal property for loss insured by this Additional Coverage;

b. hidden decay of a supporting or weight-bearing structural member of the building;

c. hidden insect or vermin damage to a structural member of the building;

d. weight of contents, equipment, animals or people;

e. weight of ice, snow, sleet or rain which collects on a roof; or

f. use of defective material or methods in the construction (includes remodeling or renovation) of the building, if the collapse occurs during the course of the construction of the building.

Loss to an awning, fence, patio, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under items b., c., d., e. and f. unless the

6/25

FP-7955 KT

This coverage does not increase the limit applying to the
damaged property.

12. **Locks.** We will pay the reasonable expenses you incur
to re-key locks on exterior doors of the dwelling located
on the **residence premises**, when the keys to those
locks are a part of a covered theft loss.

No deductible applies to this coverage.

## INFLATION COVERAGE

The limits of liability shown in the **Declarations** for Cover-
age A, Coverage B and, when applicable, Option ID will be

increased at the same rate as the increase in the Inflation
Coverage Index shown in the **Declarations**.

To find the limits on a given date:

1. divide the Index on that date by the Index as of the
effective date of this Inflation Coverage provision; then

2. multiply the resulting factor by the limits of liability for
Coverage A, Coverage B and Option ID separately.

The limits of liability will not be reduced to less than the
amounts shown in the **Declarations**.

If during the term of this policy the Coverage A limit of liability
is changed at your request, the effective date of this Inflation
Coverage provision is changed to coincide with the effective
date of such change.

# SECTION I - LOSSES INSURED

## COVERAGE A - DWELLING

We insure for accidental direct physical loss to the property
described in Coverage A, except as provided in **SECTION I -
LOSSES NOT INSURED**.

## COVERAGE B - PERSONAL PROPERTY

We insure for accidental direct physical loss to property
described in Coverage B caused by the following perils,
except as provided in **SECTION I - LOSSES NOT INSURED**:

1. **Fire** or **lightning**.

2. **Windstorm or hail.** This peril does not include loss to
property contained in a building caused by rain, snow,
sleet, sand or dust. This limitation does not apply when
the direct force of wind or hail damages the building
causing an opening in a roof or wall and the rain, snow,
sleet, sand or dust enters through this opening.

This peril includes loss to watercraft of all types and their
trailers, furnishings, equipment, and outboard motors,
only while inside a fully enclosed building.

3. **Explosion.**

4. **Riot or civil commotion.**

5. **Aircraft,** including self-propelled missiles and space-
craft.

6. **Vehicles,** meaning impact by a vehicle.

7. **Smoke,** meaning sudden and accidental damage from
smoke.

This peril does not include loss caused by smoke from
agricultural smudging or industrial operations.

8. **Vandalism or malicious mischief,** meaning only willful
and malicious damage to or destruction of property.

9. **Theft,** including attempted theft and loss of property from
a known location when it is probable that the property has
been stolen.

This peril does not include:

a. loss of a precious or semi-precious stone from its
setting;

b. loss caused by theft:

(1) committed by an **insured** or by any other person
regularly residing on the **insured location.** Prop-
erty of a student who is an **insured** is covered
while located at a residence away from home, if
the theft is committed by a person who is not an
**insured;**

(2) in or to a dwelling under construction or of mate-
rials and supplies for use in the construction until
the dwelling is completed and occupied; or

c. loss cau
dence p

(1) prop
rent
while
Prop
ered

(2) wate
equip

(3) traile
carri

If the res
cipal resi
cipal res
away fro
days afte

10. **Falling obje**
erty containe
wall of the b
Damage to th

11. **Weight of ice**
property cont

7/25

FP-7955 KT

(3) from the part of a **residence premises** rented to others:

    (a) caused by a tenant, members of the tenant's household, or the tenant's employees;

    (b) of money, bank notes, bullion, gold, goldware, silver, silverware, pewterware, platinum, coins and medals;

    (c) of securities, checks, cashier's checks, traveler's checks, money orders and other negotiable instruments, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, passports, tickets and stamps; or

    (d) of jewelry, watches, fur garments and garments trimmed with fur, precious and semi-precious stones;

c. loss caused by theft that occurs away from the **residence premises** of:

    (1) property while at any other residence owned, rented to, or occupied by an **insured**, except while an **insured** is temporarily residing there. Property of a student who is an **insured** is covered while at a residence away from home;

    (2) watercraft of all types, including their furnishings, equipment and outboard motors; or

    (3) trailers and campers designed to be pulled by or carried on a vehicle.

If the **residence premises** is a newly acquired principal residence, property in the immediate past principal residence shall not be considered property away from the **residence premises** for the first 30 days after the inception of this policy.

10. **Falling objects**. This peril does not include loss to property contained in a building unless the roof or an exterior wall of the building is first damaged by a falling object. Damage to the falling object itself is not included.

11. **Weight of ice, snow or sleet** which causes damage to property contained in a building.

12. **Sudden and accidental discharge or overflow of water** or steam from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system, or from within a household appliance.

This peril does not include loss:

a. to the system or appliance from which the water or steam escaped;

b. caused by or resulting from freezing;

c. caused by or resulting from water or sewage from outside the **residence premises** plumbing system that enters through sewers or drains, or water which enters into and overflows from within a sump pump, sump pump well or any other system designed to remove subsurface water which is drained from the foundation area; or

d. caused by or resulting from continuous or repeated seepage or leakage of water or steam which occurs over a period of time and results in deterioration, corrosion, rust, mold, or wet or dry rot.

13. **Sudden and accidental tearing asunder, cracking, burning or bulging** of a steam or hot water heating system, an air conditioning or automatic fire protective sprinkler system, or an appliance for heating water.

This peril does not include loss:

a. caused by or resulting from freezing; or

b. caused by or resulting from continuous or repeated seepage or leakage of water or steam which occurs over a period of time and results in deterioration, corrosion, rust, mold, or wet or dry rot.

14. **Freezing** of a plumbing, heating, air conditioning or automatic fire protective sprinkler system, or of a household appliance.

This peril does not include loss on the **residence premises** while the dwelling is vacant, unoccupied or being constructed, unless you have used reasonable care to:

a. maintain heat in the building; or

b. shut off the water supply and drain the system and appliances of water.

8/25

FP-7955 KT

ances, devices, fixtures and wiring from an increase or decrease of artificially generated electrical current. We will pay up to $1,000 under this peril for each damaged item described above.

erty caused by breakage of glass which is a part of a building on the **residence premises**. There is no coverage for loss or damage to the glass.

roots.

However, we do insu
a. through m. unless
Insured by this Secti

## SECTION I - LOSSES NOT INSURED

1. We do not insure for any loss to the property described in Coverage A which consists of, or is directly and immediately caused by, one or more of the perils listed in items a. through n. below, regardless of whether the loss occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:

   a. collapse, except as specifically provided in **SECTION I - ADDITIONAL COVERAGES, Collapse**;

   b. freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system, or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing. This exclusion only applies while the dwelling is vacant, unoccupied or being constructed. This exclusion does not apply if you have used reasonable care to:

      (1) maintain heat in the building; or

      (2) shut off the water supply and drain the system and appliances of water;

   c. freezing, thawing, pressure or weight of water or ice, whether driven by wind or not, to a swimming pool, hot tub or spa, including their filtration and circulation systems, fence, pavement, patio, foundation, retaining wall, bulkhead, pier, wharf or dock;

   d. theft in or to a dwelling under construction, or of materials and supplies for use in the construction, until the dwelling is completed and occupied;

   e. vandalism or malicious mischief or breakage of glass and safety glazing materials if the dwelling has been vacant for more than 30 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant;

   f. continuous or repeated seepage or leakage of water or steam from a:

      (1) heating, air conditioning or automatic fire protective sprinkler system;

      (2) household appliance; or

      (3) plumbing system, including from, within or around any shower stall, shower bath, tub installation, or other plumbing fixture, including their walls, ceilings or floors;

   which occurs over a period of time. If loss to covered property is caused by water or steam not otherwise excluded, we will cover the cost of tearing out and replacing any part of the building necessary to repair the system or appliance. We do not cover loss to the system or appliance from which the water or steam escaped;

   g. wear, tear, marring, scratching, deterioration, inherent vice, latent defect or mechanical breakdown;

   h. corrosion, electrolysis or rust;

   i. mold, fungus or wet or dry rot;

   j. contamination;

   k. smog, smoke from agricultural smudging or industrial operations;

   l. settling, cracking, shrinking, bulging, or expansion of pavements, patios, foundation, walls, floors, roofs or ceilings;

   m. birds, vermin, rodents, insects, or domestic animals. We do cover the breakage of glass or safety glazing material which is a part of a building, when caused by birds, vermin, rodents, insects or domestic animals; or

2. We do not insure un
would not have occu
of the following exc
such loss regardles
event; or (b) other ca
causes acted concu
excluded event to p
event occurs sudde
widespread damag
forces, or occurs as

   a. **Ordinance or**
   ordinance or lav
   or demolition of

   b. **Earth Moveme**
   ing, expanding
   combined with
   cludes but is r
   mudflow, mudsl
   movement resu
   selection or an
   ment also inclu
   except as spec
   **DITIONAL CO**

   However, we c
   resulting from e
   ing fire loss is i

   c. **Water Damage**

      (1) flood, surfa
      seiche, ove
      any of thes

      (2) water or s
      **premises**
      sewers or c
      overflows f
      well or an

Case 3:15-cv-00341-TAV-HBG   Document 1-2   Filed 08/05/15   Page 23 of 42   PageID #: 28

n. pressure from or presence of tree, shrub or plant roots.

However, we do insure for any resulting loss from items a. through m. unless the resulting loss is itself a Loss Not Insured by this Section.

2. We do not insure under any coverage for any loss which would not have occurred in the absence of one or more of the following excluded events. We do not insure for such loss regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss; or (d) whether the event occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:

a. **Ordinance or Law**, meaning enforcement of any ordinance or law regulating the construction, repair or demolition of a building or other structure.

b. **Earth Movement**, meaning the sinking, rising, shifting, expanding or contracting of earth, all whether combined with water or not. Earth movement includes but is not limited to earthquake, landslide, mudflow, mudslide, sinkhole, subsidence, erosion or movement resulting from improper compaction, site selection or any other external forces. Earth movement also includes volcanic explosion or lava flow, except as specifically provided in **SECTION I - ADDITIONAL COVERAGES, Volcanic Action.**

However, we do insure for any direct loss by fire resulting from earth movement, provided the resulting fire loss is itself a Loss Insured.

c. **Water Damage**, meaning:

(1) flood, surface water, waves, tidal water, tsunami, seiche, overflow of a body of water, or spray from any of these, all whether driven by wind or not;

(2) water or sewage from outside the **residence premises** plumbing system that enters through sewers or drains, or water which enters into and overflows from within a sump pump, sump pump well or any other system designed to remove

subsurface water which is drained from the foundation area; or

(3) water below the surface of the ground, including water which exerts pressure on, or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure.

However, we do insure for any direct loss by fire, explosion or theft resulting from water damage, provided the resulting loss is itself a Loss Insured.

d. **Neglect**, meaning neglect of the **insured** to use all reasonable means to save and preserve property at and after the time of a loss, or when property is endangered.

e. **War**, including any undeclared war, civil war, insurrection, rebellion, revolution, warlike act by a military force or military personnel, destruction or seizure or use for a military purpose, and including any consequence of any of these. Discharge of a nuclear weapon shall be deemed a warlike act even if accidental.

f. **Nuclear Hazard**, meaning any nuclear reaction, radiation, or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these. Loss caused by the nuclear hazard shall not be considered loss caused by fire, explosion or smoke.

However, we do insure for any direct loss by fire resulting from the nuclear hazard, provided the resulting fire loss is itself a Loss Insured.

3. We do not insure under any coverage for any loss consisting of one or more of the items below. Further, we do not insure for loss described in paragraphs 1. and 2. immediately above regardless of whether one or more of the following: (a) directly or indirectly cause, contribute to or aggravate the loss; or (b) occur before, at the same time, or after the loss or any other cause of the loss:

a. conduct, act, failure to act, or decision of any person, group, organization or governmental body whether intentional, wrongful, negligent, or without fault;

FP-7955 KT

b. defect, weakness, inadequacy, fault or unsoundness in:

(1) planning, zoning, development, surveying, siting;

(2) design, specifications, workmanship, construction, grading, compaction;

(3) materials used in construction or repair; or

(4) maintenance;

of any property (including land, structures, or improvements of any kind) whether on or off the **residence premises;** or

c. weather conditions.

However, we do insure for any resulting loss from items a., b. and c. unless the resulting loss is itself a Loss Not Insured by this Section.

# SECTION I - LOSS SETTLEMENT

Only the Loss Settlement provisions shown in the **Declarations** apply. We will settle covered property losses according to the following.

## COVERAGE A - DWELLING

### 1. A1 - Replacement Cost Loss Settlement - Similar Construction.

a. We will pay the cost to repair or replace with similar construction and for the same use on the premises shown in the **Declarations,** the damaged part of the property covered under **SECTION I - COVERAGES, COVERAGE A - DWELLING,** except for wood fences, subject to the following:

(1) until actual repair or replacement is completed, we will pay only the actual cash value at the time of the loss of the damaged part of the property, up to the applicable limit of liability shown in the **Declarations,** not to exceed the cost to repair or replace the damaged part of the property;

(2) when the repair or replacement is actually completed, we will pay the covered additional amount you actually and necessarily spend to repair or replace the damaged part of the property, or an amount up to the applicable limit of liability shown in the **Declarations,** whichever is less;

(3) to receive any additional payments on a replacement cost basis, you must complete the actual repair or replacement of the damaged part of the property within two years after the date of loss, and notify us within 30 days after the work has been completed; and

(4) we will not pay for increased costs resulting from enforcement of any ordinance or law regulating the construction, repair or demolition of a building or other structure, except as provided under **Option OL - Building Ordinance or Law Coverage.**

b. Wood Fences: We will pay the actual cash value at the time of loss for loss or damage to wood fences, not to exceed the limit of liability shown in the **Declarations** for COVERAGE A - DWELLING EXTENSION.

### 2. A2 - Replacement Cost Loss Settlement - Common Construction.

a. We will pay the cost to repair or replace with common construction and for the same use on the premises shown in the **Declarations,** the damaged part of the property covered under **SECTION I - COVERAGES, COVERAGE A - DWELLING,** except for wood fences, subject to the following:

(1) we will pay only for repair or replacement of the damaged part of the property with common construction techniques and materials commonly used by the building trades in standard new construction. We will not pay the cost to repair or replace obsolete, antique or custom construction with like kind and quality;

(2) until actual repair or replacement is completed, we will pay only the actual cash value at the time of the loss of the damaged part of the property, up to the applicable limit of liability shown in the **Declarations,** not to exceed the cost to repair or

replace the
described ir

(3) when the re
pleted as d
the covered
necessarily
aged part o
applicable l
**tions,** whicl

(4) to receive a
ment cost l
repair or re|
property wi
and notify t
been comp

(5) we will not |
enforcemei
the constru
or other str
**tion OL - |**
**age.**

b. Wood Fences:
the time of los:
not to exceed t
**rations** for C(
SION.

## COVERAGE B - PER!

### 1. B1 - Limited Repl

a. We will pay th
covered under
**AGE B - PER!**
erty listed in ite

(1) until repai
pay only th
ciation;

(2) after repai
pay the di
replace le:

replace the damaged part of the property as described in a.(1) above;

(3) when the repair or replacement is actually completed as described in a.(1) above, we will pay the covered additional amount you actually and necessarily spend to repair or replace the damaged part of the property, or an amount up to the applicable limit of liability shown in the **Declarations**, whichever is less;

(4) to receive any additional payments on a replacement cost basis, you must complete the actual repair or replacement of the damaged part of the property within two years after the date of loss, and notify us within 30 days after the work has been completed; and

(5) we will not pay for increased costs resulting from enforcement of any ordinance or law regulating the construction, repair or demolition of a building or other structure, except as provided under **Option OL - Building Ordinance or Law Coverage**.

b. Wood Fences: We will pay the actual cash value at the time of loss for loss or damage to wood fences, not to exceed the limit of liability shown in the **Declarations** for COVERAGE A - DWELLING EXTENSION.

## COVERAGE B - PERSONAL PROPERTY

### 1. B1 - Limited Replacement Cost Loss Settlement.

a. We will pay the cost to repair or replace property covered under **SECTION I - COVERAGES, COVERAGE B - PERSONAL PROPERTY**, except for property listed in item b. below, subject to the following:

(1) until repair or replacement is completed, we will pay only the cost to repair or replace less depreciation;

(2) after repair or replacement is completed, we will pay the difference between the cost to repair or replace less depreciation and the cost you have

actually and necessarily spent to repair or replace the property; and

(3) if property is not repaired or replaced within two years after the date of loss, we will pay only the cost to repair or replace less depreciation.

b. We will pay market value at the time of loss for:

(1) antiques, fine arts, paintings, statuary and similar articles which by their inherent nature cannot be replaced with new articles;

(2) articles whose age or history contribute substantially to their value including, but not limited to, memorabilia, souvenirs and collectors items; and

(3) property not useful for its intended purpose.

However, we will not pay an amount exceeding the smallest of the following for items a. and b. above:

(1) our cost to replace at the time of loss;

(2) the full cost of repair;

(3) any special limit of liability described in the policy; or

(4) any applicable Coverage B limit of liability.

### 2. B2 - Depreciated Loss Settlement.

a. We will pay the cost to repair or replace less depreciation at the time of loss for property covered under **SECTION I - COVERAGES, COVERAGE B - PERSONAL PROPERTY**, except for property listed in item b. below.

b. We will pay market value at the time of loss for:

(1) antiques, fine arts, paintings, statuary and similar articles which by their inherent nature cannot be replaced with new articles;

(2) articles whose age or history contribute substantially to their value including, but not limited to, memorabilia, souvenirs and collectors items; and

(3) property not useful for its intended purpose.

$^{12}/_{25}$

FP-7955 KT

However, we will not pay an amount exceeding the smallest of the following for items a. and b. above:

(1) our cost to replace at the time of loss;

(2) the full cost of repair;

(3) any special limit of liability described in the policy; or

(4) any applicable Coverage B limit of liability.

# SECTION I - CONDITIONS

1. **Insurable Interest and Limit of Liability.** Even if more than one person has an insurable interest in the property covered, we shall not be liable:

   a. to the **insured** for an amount greater than the **insured's** interest; or

   b. for more than the applicable limit of liability.

2. **Your Duties After Loss.** After a loss to which this insurance may apply, you shall see that the following duties are performed:

   a. give immediate notice to us or our agent. Also notify the police if the loss is caused by theft. Also notify the credit card company or bank if the loss involves a credit card or bank fund transfer card;

   b. protect the property from further damage or loss, make reasonable and necessary temporary repairs required to protect the property, keep an accurate record of repair expenditures;

   c. prepare an inventory of damaged or stolen personal property. Show in detail the quantity, description, age, replacement cost and amount of loss. Attach to the inventory all bills, receipts and related documents that substantiate the figures in the inventory;

   d. as often as we reasonably require:

      (1) exhibit the damaged property;

      (2) provide us with records and documents we request and permit us to make copies;

      (3) submit to and subscribe, while not in the presence of any other **insured**:

          (a) statements; and

          (b) examinations under oath; and

   e. submit to us, within 60 days after the loss, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:

(4) produce employees, members of the **insured's** household or others for examination under oath to the extent it is within the **insured's** power to do so; and

   (1) the time and cause of loss;

   (2) interest of the **insured** and all others in the property involved and all encumbrances on the property;

   (3) other insurance which may cover the loss;

   (4) changes in title or occupancy of the property during the term of this policy;

   (5) specifications of any damaged building and detailed estimates for repair of the damage;

   (6) an inventory of damaged or stolen personal property described in 2.c.;

   (7) receipts for additional living expenses incurred and records supporting the fair rental value loss; and

   (8) evidence or affidavit supporting a claim under the Credit Card, Bank Fund Transfer Card, Forgery and Counterfeit Money coverage, stating the amount and cause of loss.

3. **Loss to a Pair or Set.** In case of loss to a pair or set, we may elect to:

   a. repair or replace any part to restore the pair or set to its value before the loss; or

   b. pay the difference between the depreciated value of the property before and after the loss.

4. **Appraisal.** [text cut off] loss, either [...] be set by a [...] appraisal. [...] appraiser. [...] identity wi [...] The two a [...] tial umpire [...] an umpire [...] a court of r [...] **ises** is loc [...] then set th [...] a written re [...] upon shall [...] to agree w [...] difference [...] any two of [...] Each app [...] appraiser. [...] pensation [...] us.

5. **Other Ins** [text cut off] covered by [...] the loss. C [...] applicable [...] of insuran [...]

6. **Suit Agair** [text cut off] has been [...] action mus [...] loss or dar [...]

7. **Our Optic** [text cut off] property d [...] property w [...]

8. **Loss Pay** [text cut off] pay you ur [...] or is legal [...] payable 60 [...]

   a. reach a [...]

   b. there is [...]

   c. there is [...]

9. **Abandonr** [text cut off] property al [...]

13/25

FP-7955 KT

4. **Appraisal**. If you and we fail to agree on the amount of loss, either one can demand that the amount of the loss be set by appraisal. If either makes a written demand for appraisal, each shall select a competent, disinterested appraiser. Each shall notify the other of the appraiser's identity within 20 days of receipt of the written demand. The two appraisers shall then select a competent, impartial umpire. If the two appraisers are unable to agree upon an umpire within 15 days, you or we can ask a judge of a court of record in the state where the **residence premises** is located to select an umpire. The appraisers shall then set the amount of the loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon shall be the amount of the loss. If the appraisers fail to agree within a reasonable time, they shall submit their differences to the umpire. Written agreement signed by any two of these three shall set the amount of the loss. Each appraiser shall be paid by the party selecting that appraiser. Other expenses of the appraisal and the compensation of the umpire shall be paid equally by you and us.

5. **Other Insurance**. If a loss covered by this policy is also covered by other insurance, we will pay only our share of the loss. Our share is the proportion of the loss that the applicable limit under this policy bears to the total amount of insurance covering the loss.

6. **Suit Against Us**. No action shall be brought unless there has been compliance with the policy provisions. The action must be started within one year after the date of loss or damage.

7. **Our Option**. We may repair or replace any part of the property damaged or stolen with similar property. Any property we pay for or replace becomes our property.

8. **Loss Payment**. We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 60 days after we receive your proof of loss and:

   a. reach agreement with you;

   b. there is an entry of a final judgment; or

   c. there is a filing of an appraisal award with us.

9. **Abandonment of Property**. We need not accept any property abandoned by an **insured**.

10. **Mortgage Clause**. The word "mortgagee" includes trustee.

    a. If a mortgagee is named in this policy, any loss payable under Coverage A shall be paid to the mortgagee and you, as interests appear. If more than one mortgagee is named, the order of payment shall be the same as the order of precedence of the mortgages.

    b. If we deny your claim, that denial shall not apply to a valid claim of the mortgagee, if the mortgagee:

       (1) notifies us of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware;

       (2) pays on demand any premium due under this policy, if you have not paid the premium; and

       (3) submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so. Policy conditions relating to Appraisal, Suit Against Us and Loss Payment apply to the mortgagee.

    c. If this policy is cancelled by us, the mortgagee shall be notified at least 10 days before the date cancellation takes effect. Proof of mailing shall be proof of notice.

    d. If we pay the mortgagee for any loss and deny payment to you:

       (1) we are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or

       (2) at our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, we shall receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.

    e. Subrogation shall not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

11. **No Benefit to Bailee**. We will not recognize an assignment or grant coverage for the benefit of a person or organization holding, storing or transporting property for

FP-7955 KT

FP-79
(4/97)

Case 3:15-cv-00341-TAV-HBG Document 1-2 Filed 08/05/15 Page 28 of 42 PageID #: 33

12. **Intentional Acts**. If you or any person insured under this policy causes or procures a loss to property covered

benefits, then this policy is void and we will not pay you or any other **insured** for this loss.

# SECTION II - LIABILITY COVERAGES

## COVERAGE L - PERSONAL LIABILITY

If a claim is made or a suit is brought against an **insured** for damages because of **bodily injury** or **property damage** to which this coverage applies, caused by an **occurrence**, we will:

1. pay up to our limit of liability for the damages for which the **insured** is legally liable; and

2. provide a defense at our expense by counsel of our choice. We may make any investigation and settle any claim or suit that we decide is appropriate. Our obligation to defend any claim or suit ends when the amount we pay for damages, to effect settlement or satisfy a judgment resulting from the **occurrence**, equals our limit of liability.

## COVERAGE M - MEDICAL PAYMENTS TO OTHERS

We will pay the necessary medical expenses incurred or medically ascertained within three years from the date of an accident causing **bodily injury**. Medical expenses means reasonable charges for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and funeral services. This coverage applies only:

1. to a person on the **insured location** with the permission of an **insured**;

2. to a person off the **insured location**, if the **bodily injury**:

   a. arises out of a condition on the **insured location** or the ways immediately adjoining;

   b. is caused by the activities of an **insured**;

   c. is caused by a **residence employee** in the course of the **residence employee's** employment by an **insured**; or

   d. is caused by an animal owned by or in the care of an **insured**; or

3. to a **residence employee** if the **occurrence** causing **bodily injury** occurs off the **insured location** and arises

out of or in the course of the **residence employee's** employment by an **insured**.

## SECTION II - ADDITIONAL COVERAGES

We cover the following in addition to the limits of liability:

1. **Claim Expenses**. We pay:

   a. expenses we incur and costs taxed against an **insured** in suits we defend;

   b. premiums on bonds required in suits we defend, but not for bond amounts greater than the Coverage **L** limit. We are not obligated to apply for or furnish any bond;

   c. reasonable expenses an **insured** incurs at our request. This includes actual loss of earnings (but not loss of other income) up to \$100 per day for aiding us in the investigation or defense of claims or suits;

   d. prejudgment interest awarded against the **insured** on that part of the judgment we pay; and

   e. interest on the entire judgment which accrues after entry of the judgment and before we pay or tender, or deposit in court that part of the judgment which does not exceed the limit of liability that applies.

2. **First Aid Expenses**. We will pay expenses for first aid to others incurred by an **insured** for **bodily injury** covered under this policy. We will not pay for first aid to you or any other **insured**.

3. **Damage to Property of Others**.

   a. We will pay for **property damage** to property of others caused by an **insured**.

   b. We will not pay more than the smallest of the following amounts:

      (1) replacement cost at the time of loss;

      (2) full cost of repair; or

15/25

FP-7955 KT

(3) $500 in any one **occurrence**.

c. We will not pay for **property damage**:

(1) if insurance is otherwise provided in this policy;

(2) caused intentionally by an **insured** who is 13 years of age or older;

(3) to property, other than a rented golf cart, owned by or rented to an **insured**, a tenant of an **insured**, or a resident in your household; or

(4) arising out of:

(a) **business** pursuits;

(b) any act or omission in connection with a premises an **insured** owns, rents or controls, other than the **insured location**; or

(c) the ownership, maintenance, or use of a **motor vehicle**, aircraft, or watercraft, including airboat, air cushion, personal watercraft, sail board or similar type watercraft.

## SECTION II - EXCLUSIONS

1. Coverage L and Coverage M do not apply to:

a. **bodily injury** or **property damage**:

(1) which is either expected or intended by the **insured**; or

(2) which is the result of willful and malicious acts of the **insured**;

b. **bodily injury** or **property damage** arising out of **business** pursuits of any **insured** or the rental or holding for rental of any part of any premises by any **insured**. This exclusion does not apply:

(1) to activities which are ordinarily incident to non-**business** pursuits;

(2) with respect to Coverage L to the occasional or part-time **business** pursuits of an **insured** who is under 19 years of age;

(3) to the rental or holding for rental of a residence of yours:

(a) on an occasional basis for the exclusive use as a residence;

(b) in part, unless intended for use as a residence by more than two roomers or boarders; or

(c) in part, as an office, school, studio or private garage;

(4) when the dwelling on the **residence premises** is a two, three or four-family dwelling and you oc-

cupy one part and rent or hold for rental the other part; or

(5) to farm land (without buildings), rented or held for rental to others, but not to exceed a total of 500 acres, regardless of the number of locations;

c. **bodily injury** or **property damage** arising out of the rendering or failing to render professional services;

d. **bodily injury** or **property damage** arising out of any premises currently owned or rented to any **insured** which is not an **insured location**. This exclusion does not apply to **bodily injury** to a **residence employee** arising out of and in the course of the **residence employee's** employment by an **insured**;

e. **bodily injury** or **property damage** arising out of the ownership, maintenance, use, loading or unloading of:

(1) an aircraft;

(2) a **motor vehicle** owned or operated by or rented or loaned to any **insured**; or

(3) a watercraft:

(a) owned by or rented to any **insured** if it has inboard or inboard-outdrive motor power of more than 50 horsepower;

(b) owned by or rented to any **insured** if it is a sailing vessel, with or without auxiliary power, 26 feet or more in overall length;

P-7955 KT

16
/25

FP-7955 KT

Case 3:15-cv-00341-TAV-HBG   Document 1-2   Filed 08/05/15   Page 30 of 42   PageID #: 35

(c) powered by one or more outboard motors with more than 25 total horsepower owned by any **insured**;

(d) designated as an airboat, air cushion, or similar type of craft; or

(e) owned by any **insured** which is a personal watercraft using a water jet pump powered by an internal combustion engine as the primary source of propulsion.

This exclusion does not apply to **bodily injury** to a **residence employee** arising out of and in the course of the **residence employee's** employment by an **insured**. Exclusion e.(3) does not apply while the watercraft is on the **residence premises**;

f. **bodily injury** or **property damage** arising out of:

(1) the entrustment by any **insured** to any person;

(2) the supervision by any **insured** of any person;

(3) any liability statutorily imposed on any **insured**; or

(4) any liability assumed through an unwritten or written agreement by any **insured**;

with regard to the ownership, maintenance or use of any aircraft, watercraft, or **motor vehicle** which is not covered under Section II of this policy;

g. **bodily injury** or **property damage** caused directly or indirectly by war, including undeclared war, or any warlike act including destruction or seizure or use for a military purpose, or any consequence of these. Discharge of a nuclear weapon shall be deemed a warlike act even if accidental;

h. **bodily injury** to you or any **insured** within the meaning of part a. or b. of the definition of **insured**.

This exclusion also applies to any claim made or suit brought against you or any **insured** to share damages with or repay someone else who may be obligated to pay damages because of the **bodily injury** sustained by you or any **insured** within the meaning of part a. or b. of the definition of **insured**;

i. any claim made or suit brought against any **insured** by:

(1) any person who is in the care of any **insured** because of child care services provided by or at the direction of:

(a) any **insured**;

(b) any employee of any **insured**; or

(c) any other person actually or apparently acting on behalf of any **insured**; or

(2) any person who makes a claim because of **bodily injury** to any person who is in the care of any **insured** because of child care services provided by or at the direction of:

(a) any **insured**;

(b) any employee of any **insured**; or

(c) any other person actually or apparently acting on behalf of any **insured**.

This exclusion does not apply to the occasional child care services provided by any **insured**, or to the part-time child care services provided by any **insured** who is under 19 years of age; or

j. **bodily injury** or **property damage** arising out of an **insured's** participation in, or preparation or practice for any prearranged or organized race, speed or demolition contest, or similar competition involving a motorized land vehicle or motorized watercraft. This exclusion does not apply to a sailing vessel less than 26 feet in overall length with or without auxiliary power.

2. Coverage L does not apply to:

a. liability:

(1) for your share of any loss assessment charged against all members of an association of property owners; or

(2) assumed under any unwritten contract or agreement, or by contract or agreement in connection with a **business** of the **insured**;

b. **property damage** to property currently owned by any **insured**;

c. **property damage** to property rented to, occupied or used by or in the care of any **insured**. This exclusion

.sm

d. **bo**
  be
  vid
  no
  lav

e. **bo**
  in
  nu
  bu
  lial
  iss
  cia
  Nu
  the

1. **Limit**
   **Decla**
   **occur**
   claims

   The C
   is our l
   one pe

2. **Sever**
   rately l
   our lim

3. **Duties**
   the ins
   You sh
   are pel

a. giv
   pra

   (1)

   (2)

or at · · · smoke or explosion;

d. **bodily injury** to a person eligible to receive any benefits required to be provided or voluntarily provided by an **insured** under a workers' compensation, non-occupational disability, or occupational disease law;

y act-

bodily
of any
ovided

e. **bodily injury** or **property damage** for which an **insured** under this policy is also an insured under a nuclear energy liability policy or would be an insured but for its termination upon exhaustion of its limit of liability. A nuclear energy liability policy is a policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada, or any of their successors.

atly act-

nal child
r to the
**insured**

out of an
· practice
speed or
involving a
craft. This
less man
. auxiliary

a. to a **residence employee** if it occurs off the **insured location** and does not arise out of or in the course of the **residence employee's** employment by an **insured**;

b. to a person eligible to receive any benefits required to be provided or voluntarily provided under any workers' compensation, non-occupational disability or occupational disease law;

c. from nuclear reaction, radiation or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these;

d. to a person other than a **residence employee** of an **insured**, regularly residing on any part of the **insured location**.

## SECTION II - CONDITIONS

1. **Limit of Liability.** The Coverage L limit is shown in the **Declarations**. This is our limit for all damages from each **occurrence** regardless of the number of **insureds**, claims made or persons injured.

The Coverage M limit is shown in the **Declarations**. This is our limit for all medical expense for **bodily injury** to one person as the result of one accident.

2. **Severability of Insurance.** This insurance applies separately to each **insured**. This condition shall not increase our limit of liability for any one **occurrence**.

nt charged
of property

3. **Duties After Loss.** In case of an accident or **occurrence**, the **insured** shall perform the following duties that apply. You shall cooperate with us in seeing that these duties are performed:

ct or agree-
connection

a. give written notice to us or our agent as soon as practicable, which sets forth:

(1) the identity of this policy and **insured**;

wned by any

occupied or
nis exclusion

(2) reasonably available information on the time, place and circumstances of the accident or **occurrence**; and

(3) names and addresses of any claimants and available witnesses;

b. immediately forward to us every notice, demand, summons or other process relating to the accident or **occurrence**;

c. at our request, assist in:

(1) making settlement;

(2) the enforcement of any right of contribution or indemnity against a person or organization who may be liable to an **insured**;

(3) the conduct of suits and attend hearings and trials; and

(4) securing and giving evidence and obtaining the attendance of witnesses;

d. under the coverage - **Damage to Property of Others**, exhibit the damaged property if within the **insured's** control; and

e. the **insured** shall not, except at the **insured's** own cost, voluntarily make payments, assume obligations or incur expenses. This does not apply to expense for first aid to others at the time of the **bodily injury**.

4. **Duties of an Injured Person - Coverage M.** The injured person, or, when appropriate, someone acting on behalf of that person, shall:

   a. give us written proof of claim, under oath if required, as soon as practicable;

   b. execute authorization to allow us to obtain copies of medical reports and records; and

   c. submit to physical examination by a physician selected by us when and as often as we reasonably require.

5. **Payment of Claim - Coverage M.** Payment under this coverage is not an admission of liability by an **insured** or us.

6. **Suit Against Us.** No action shall be brought against us unless there has been compliance with the policy provisions.

No one shall have the right to join us as a party to an action against an **insured**. Further, no action with respect to Coverage L shall be brought against us until the obligation of the **insured** has been determined by final judgment or agreement signed by us.

7. **Bankruptcy of an Insured.** Bankruptcy or insolvency of an **insured** shall not relieve us of our obligation under this policy.

8. **Other Insurance - Coverage L.** This insurance is excess over any other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.

## SECTION I AND SECTION II - CONDITIONS

1. **Policy Period.** This policy applies only to loss under Section I or **bodily injury** or **property damage** under Section II which occurs during the period this policy is in effect.

2. **Concealment or Fraud.** This policy is void as to you and any other **insured**, if you or any other **insured** under this policy has intentionally concealed or misrepresented any material fact or circumstance relating to this insurance, whether before or after a loss.

3. **Liberalization Clause.** If we adopt any revision which would broaden coverage under this policy without additional premium, within 60 days prior to or during the period this policy is in effect, the broadened coverage will immediately apply to this policy.

4. **Waiver or Change of Policy Provisions.** A waiver or change of any provision of this policy must be in writing by us to be valid. Our request for an appraisal or examination shall not waive any of our rights.

5. **Cancelation.**

   a. You may cancel this policy at any time by notifying us in writing of the date cancellation is to take effect. We may waive the requirement that the notice be in writing by confirming the date and time of cancellation to you in writing.

   b. We may cancel this policy only for the reasons stated in this condition. We will notify you in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, or mailed to you at your mailing address shown in the **Declarations**. Proof of mailing shall be sufficient proof of notice:

     (1) When you have not paid the premium, we may cancel at any time by notifying you at least 10 days before the date cancellation takes effect. This condition applies whether the premium is payable to us or our agent or under any finance or credit plan.

     (2) When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason. We may cancel by notifying you at least 10 days before the date cancellation takes effect.

     (3) When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel:

       (a) if there has been a material misrepresentation of fact which, if known to us, would have caused us not to issue this policy; or

     (4) W
       o
       v
       3(

   c. When
      perioc
      date
      tion, f
      such
      than a
      premi

   d. The
      notice
      to us.
      able t

6. **Nonrene**
   elect not
   you, or m
   the **Decl**
   at least 3(
   Proof of

7. **Assignm**
   unless w

8. **Subrogat**
   loss all

Each Optiona
**Declarations**
exclusions an

**Option Al - A**
extended to i
**Declarations**
file with us. C

1. Section I

jht against us
ə policy provi-

a party to an
·n written respect
t us until the
·mined by final

insolvency of
ligation under

ance is excess
irance except
«cess over the

easons stated
writing of the
.ncellation no-
to you at your
ions. Proof of
:e'

iium, we may
ɔu at least 10
takes effect.
e premium is
·er any finance

t for less than
i us, we may
ncel by notify-
ɔ date cancel-

:t for 60 days
iewal with us,

iisrepresenta-
s, would have
cy; or

(b) if the risk has changed substantially since the policy was issued.

We may cancel this policy by notifying you at least 30 days before the date cancellation takes effect.

(4) When this policy is written for a period longer than one year, we may cancel for any reason at anniversary. We may cancel by notifying you at least 30 days before the date cancellation takes effect.

c. When this policy is cancelled, the premium for the period from the date of cancellation to the expiration date will be refunded. When you request cancellation, the return premium will be based on our rules for such cancellation. The return premium may be less than a full pro rata refund. When we cancel, the return premium will be pro rata.

d. The return premium may not be refunded with the notice of cancellation or when the policy is returned to us. In such cases, we will refund it within a reasonable time after the date cancellation takes effect.

6. **Nonrenewal.** We may elect not to renew this policy. If we elect not to renew, a written notice will be delivered to you, or mailed to you at your mailing address shown in the **Declarations.** The notice will be mailed or delivered at least 30 days before the expiration date of this policy. Proof of mailing shall be sufficient proof of notice.

7. **Assignment.** Assignment of this policy shall not be valid unless we give our written consent.

8. **Subrogation.** An **insured** may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.

If an assignment is sought, an **insured** shall:

a. sign and deliver all related papers;

b. cooperate with us in a reasonable manner; and

c. do nothing after a loss to prejudice such rights.

Subrogation does not apply under Section II to Medical Payments to Others or Damage to Property of Others.

9. **Death.** If any person shown in the **Declarations** or the spouse, if a resident of the same household, dies:

a. we insure the legal representative of the deceased. This condition applies only with respect to the premises and property of the deceased covered under this policy at the time of death;

b. **insured** includes:

(1) any member of **your** household who is an **insured** at the time of **your** death, but only while a resident of the **residence premises**; and

(2) with respect to **your** property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.

10. **Conformity to State Law.** When a policy provision is in conflict with the applicable law of the State in which this policy is issued, the law of the State will apply.

## OPTIONAL POLICY PROVISIONS

Each Optional Policy Provision applies only as shown in the **Declarations** and is subject to all the terms, provisions, exclusions and conditions of this policy.

**Option AI - Additional Insured.** The definition of **insured** is extended to include the person or organization shown in the **Declarations** as an Additional Insured or whose name is on file with us. Coverage is with respect to:

1. Section I - Coverage A; or

2. Section II - Coverages L and M but only with respect to the **residence premises.** This coverage does not apply to **bodily injury** to an employee arising out of or in the course of the employee's employment by the person or organization.

This option applies only with respect to the location shown in the **Declarations.**

**Option BP - Business Property.** The **COVERAGE B - PERSONAL PROPERTY, Special Limits of Liability,** item b., for property used or intended for use in a **business,**

FP-7955 KT

$^{20}/_{25}$

FP-7955 KT

including merchandise held as samples or for sale or for delivery after sale, is changed as follows:

The $1,000 limit is replaced with the amount shown in the **Declarations** for this option.

**Option BU - Business Pursuits. SECTION II - EXCLUSIONS**, item 1.b. is modified as follows:

1. Section II coverage applies to the **business** pursuits of an **insured** who is a:

   a. clerical office employee, salesperson, collector, messenger; or

   b. teacher (except college, university and professional athletic coaches), school principal or school administrator;

   while acting within the scope of the above listed occupations.

2. However, no coverage is provided:

   a. for **bodily injury** or **property damage** arising out of a **business** owned or financially controlled by the **insured** or by a partnership of which the **insured** is a partner or member;

   b. for **bodily injury** or **property damage** arising out of the rendering of or failure to render professional services of any nature (other than teaching or school administration). This exclusion includes but is not limited to:

      (1) computer programming, architectural, engineering or industrial design services;

      (2) medical, surgical, dental or other services or treatment conducive to the health of persons or animals; and

      (3) beauty or barber services or treatment;

   c. for **bodily injury** to a fellow employee of the **insured** injured in the course of employment; or

   d. when the **insured** is a member of the faculty or teaching staff of a school or college:

      (1) for **bodily injury** or **property damage** arising out of the maintenance, use, loading or unloading of:

         (a) draft or saddle animals, including vehicles for use with them; or

         (b) aircraft, **motor vehicles**, recreational motor vehicles or watercraft, airboats, air cushions or personal watercraft which use a water jet pump powered by an internal combustion engine as the primary source of propulsion;

         owned or operated, or hired by or for the **insured** or employer of the **insured** or used by the **insured** for the purpose of instruction in the use thereof; or

      (2) under Coverage M for **bodily injury** to a pupil arising out of corporal punishment administered by or at the direction of the **insured**.

**Option FA - Firearms**. Firearms are insured for accidental direct physical loss or damage.

The limits for this option are shown in the **Declarations**. The first amount is the limit for any one article; the second amount is the aggregate limit for each loss.

The following additional provisions apply:

1. we do not insure for any loss to the property described in this option either consisting of, or directly and immediately caused by, one or more of the following:

   a. mechanical breakdown, wear and tear, gradual deterioration;

   b. insects or vermin;

   c. any process of refinishing, renovating, or repairing;

   d. dampness of atmosphere or extremes of temperatures;

   e. inherent defect or faulty manufacture;

   f. rust, fouling or explosion of firearms;

   g. breakage, marring, scratching, tearing or denting unless caused by fire, thieves or accidents to conveyances; or

   h. infidelity of an **insured's** employees or persons to whom the insured property may be entrusted or rented;

2. our limit fo
   the limit sh
   the aggre

3. our limits f
   **rations** fo
   Coverage

4. our limits
   items 2. a

**Option HC - I
SONAL PRO**
electronic dat
ing or storage
to be the amo

**Option ID - In
to damaged
AGE A - DWI
SETTLEMEN**

If the amount
replace dama
limit of liability
additional am

1. the Optio
   to repair o

2. 10% of th
   building s
   **DWELLIN**

**Report Increa**
of the start of
more; or any a
which increas
any additional
not pay more
**Declarations**
within 90 days

**Option IO - In**
this option ap
pancy on file

1. **COVERA**
   2.b. is del

2. **COVERA**
   to include

21 /
  /25

FP-7955 KT

2. our limit for loss by any Coverage B peril except theft is the limit shown in the **Declarations** for Coverage B, plus the aggregate limit;

3. our limits for loss by theft are those shown in the **Declarations** for this option. These limits apply in lieu of the Coverage B theft limit; and

4. our limits for loss by any covered peril except those in items 2. and 3. are those shown in the **Declarations**.

**Option HC - Home Computer. The COVERAGE B - PERSONAL PROPERTY, Special Limits of Liability**, item i., for electronic data processing system equipment and the recording or storage media used with that equipment is increased to be the amount shown in the **Declarations** for this option.

**Option ID - Increased Dwelling Limit**. We will settle losses to damaged building structures covered under **COVERAGE A - DWELLING** according to the **SECTION I - LOSS SETTLEMENT** provision shown in the **Declarations**.

If the amount you actually and necessarily spend to repair or replace damaged building structures exceeds the applicable limit of liability shown in the **Declarations**, we will pay the additional amounts not to exceed:

1. the Option ID limit of liability shown in the **Declarations** to repair or replace the Dwelling; or

2. 10% of the Option ID limit of liability to repair or replace building structures covered under **COVERAGE A - DWELLING, Dwelling Extension**.

**Report Increased Values**. You must notify us within 90 days of the start of any new building structure costing $5,000 or more; or any additions to or remodeling of building structures which increase their values by $5,000 or more. You must pay any additional premium due for the increased value. We will not pay more than the applicable limit of liability shown in the **Declarations**, if you fail to notify us of the increased value within 90 days.

**Option IO - Incidental Business**. The coverage provided by this option applies only to that incidental **business** occupancy on file with us.

1. **COVERAGE A - DWELLING, Dwelling Extension**, item 2.b. is deleted.

2. **COVERAGE B - PERSONAL PROPERTY** is extended to include equipment, supplies and furnishings usual and incidental to this **business** occupancy. This Optional Policy Provision does not include electronic data processing system equipment or the recording or storage media used with that equipment or merchandise held as samples or for sale or for delivery after sale.

The Option IO limits are shown in the **Declarations**. The first limit applies to property on the **residence premises**. The second limit applies to property while off the **residence premises**. These limits are in addition to the **COVERAGE B - PERSONAL PROPERTY, Special Limits of Liability** on property used or intended for use in a **business**.

3. Under Section II, the **residence premises** is not considered **business** property because an **insured** occupies a part of it as an incidental **business**.

4. **SECTION II - EXCLUSIONS**, item 1.b. of Coverage L and Coverage M is replaced with the following:

   b. **bodily injury** or **property damage** arising out of **business** pursuits of an **insured** or the rental or holding for rental of any part of any premises by an **insured**. This exclusion does not apply:

   (1) to activities which are ordinarily incident to non-**business** pursuits or to **business** pursuits of an **insured** which are necessary or incidental to the use of the **residence premises** as an incidental **business;**

   (2) with respect to Coverage L to the occasional or part-time **business** pursuits of an **insured** who is under 19 years of age;

   (3) to the rental or holding for rental of a residence of yours:

      (a) on an occasional basis for exclusive use as a residence;

      (b) in part, unless intended for use as a residence by more than two roomers or boarders; or

      (c) in part, as an incidental **business** or private garage;

   (4) when the dwelling on the **residence premises** is a two family dwelling and you occupy

FP-7955 KT

FP-7955 KT

Case 3:15-cv-00341-TAV-HBG   Document 1-2   Filed 08/05/15   Page 36 of 42   PageID #: 41

one part and rent or hold for rental the other part; or

(5) to farm land (without buildings), rented or held for rental to others, but not to exceed a total of 500 acres, regardless of the number of locations.

5. This insurance does not apply to:

a. **bodily injury** to an employee of an **insured** arising out of the **residence premises** as an incidental **business** other than to a **residence employee** while engaged in the employee's employment by an **insured**;

b. **bodily injury** to a pupil arising out of corporal punishment administered by or at the direction of the **insured**;

c. liability arising out of any acts, errors or omissions of an **insured**, or any other person for whose acts an **insured** is liable, resulting from the preparation or approval of data, plans, designs, opinions, reports, programs, specifications, supervisory inspections or engineering services in the conduct of an **insured's** incidental **business** involving data processing, computer consulting or computer programming; or

d. any claim made or suit brought against any **insured** by:

(1) any person who is in the care of any **insured** because of child care services provided by or at the direction of:

(a) any **insured**;

(b) any employee of any **insured**; or

(c) any other person actually or apparently acting on behalf of any **insured**; or

(2) any person who makes a claim because of **bodily injury** to any person who is in the care of any **insured** because of child care services provided by or at the direction of:

(a) any **insured**;

(b) any employee of any **insured**; or

(c) any other person actually or apparently acting on behalf of any **insured**.

Coverage M does not apply to any person indicated in (1) and (2) above.

This exclusion does not apply to the occasional child care services provided by any **insured**, or to the part-time child care services provided by any **insured** who is under 19 years of age.

**Option JF - Jewelry and Furs.** Jewelry, watches, fur garments and garments trimmed with fur, precious and semi-precious stones, gold other than goldware, silver other than silverware and platinum are insured for accidental direct physical loss or damage.

The limits for this option are shown in the **Declarations**. The first amount is the limit for any one article; the second amount is the aggregate limit for each loss.

The following additional provisions apply:

1. we do not insure for any loss to the property described in this option either consisting of, or directly and immediately caused by, one or more of the following:

a. mechanical breakdown, wear and tear, gradual deterioration;

b. insects or vermin;

c. inherent vice; or

d. seizure or destruction under quarantine or customs regulations;

2. our limit for loss by any Coverage B peril except theft is the limit shown in the **Declarations** for Coverage B, plus the aggregate limit;

3. our limits for loss by theft are those shown in the **Declarations** for this option; and

4. our limits for loss by any covered peril except those in items 2. and 3. are those shown in the **Declarations** for this option.

**Option OL -**

1. **Coverag**

The total Ordinanc equal to **rations** **tions** at coverage amount o

2. **Damage**

When th **DWELLI** for the in damagec ment of a the enfo Insured Loss Ins

3. **Undama**

When th **DWELLI** pay for:

a. the c aged ment law if Loss time

b. loss t by en

(1) th L

(2) th ti s

(3) th o

23/25

FP-7955 KT

## Option OL - Building Ordinance or Law.

### 1. Coverage Provided.

The total limit of insurance provided by this Building Ordinance or Law provision will not exceed an amount equal to the Option OL percentage shown in the **Declarations** of the Coverage A limit shown in the **Declarations** at the time of the loss, as adjusted by the inflation coverage provisions of the policy. This is an additional amount of insurance and applies only to the dwelling.

### 2. Damaged Portions of Dwelling.

When the dwelling covered under **COVERAGE A - DWELLING** is damaged by a Loss Insured we will pay for the increased cost to repair or rebuild the physically damaged portion of the dwelling caused by the enforcement of a building, zoning or land use ordinance or law if the enforcement is directly caused by the same Loss Insured and the requirement is in effect at the time the Loss Insured occurs.

### 3. Undamaged Portions of Damaged Dwelling.

When the dwelling covered under **COVERAGE A - DWELLING** is damaged by a Loss Insured we will also pay for:

a. the cost to demolish and clear the site of the undamaged portions of the dwelling caused by the enforcement of a building, zoning or land use ordinance or law if the enforcement is directly caused by the same Loss Insured and the requirement is in effect at the time the Loss Insured occurs; and

b. loss to the undamaged portion of the dwelling caused by enforcement of any ordinance or law if:

(1) the enforcement is directly caused by the same Loss Insured;

(2) the enforcement requires the demolition of portions of the same dwelling not damaged by the same Loss Insured;

(3) the ordinance or law regulates the construction or repair of the dwelling, or establishes zoning or land use requirements at the described premises; and

(4) the ordinance or law is in force at the time of the occurrence of the same Loss Insured; or

c. the legally required changes to the undamaged portion of the dwelling caused by the enforcement of a building, zoning or land use ordinance or law if the enforcement is directly caused by the same Loss Insured and the requirement is in effect at the time the Loss Insured occurs.

### 4. Building Ordinance or Law Coverage Limitations.

a. We will not pay for any increased cost of construction under this coverage:

(1) until the dwelling is actually repaired or replaced at the same or another premises in the same general vicinity; and

(2) unless the repairs or replacement are made as soon as reasonably possible after the loss, not to exceed two years.

b. We will not pay more for loss to the undamaged portion of the dwelling caused by the enforcement of any ordinance or law than:

(1) the depreciated value of the undamaged portion of the dwelling, if the dwelling is not repaired or replaced;

(2) the amount you actually spend to replace the undamaged portion of the dwelling if the dwelling is repaired or replaced.

c. We will not pay more under this coverage than the amount you actually spend:

(1) for the increased cost to repair or rebuild the dwelling at the same or another premises in the same general vicinity if relocation is required by ordinance or law; and

(2) to demolish and clear the site of the undamaged portions of the dwelling caused by enforcement of building, zoning or land use ordinance or law.

Case 3:15-cv-00341-TAV-HBG   Document 1-2   Filed 08/05/15   Page 38 of 42   PageID #: 43

We will never pay for more than a dwelling of the same height, floor area and style on the same or similar premises as the dwelling, subject to the limit provided in paragraph 1. **Coverage Provided** of this option.

**Option SG - Silverware and Goldware Theft**. The **COVERAGE B - PERSONAL PROPERTY, Special Limits of Liability**, item h., for theft of silverware and goldware is increased to be the amount shown in the **Declarations** for this option.

IN WITNESS WHEREOF, this Company has caused this policy to be signed by its President and Secretary at Bloomington, Illinois.

*Laura P. Sullivan*  Secretary          *Edward B Rust, Jr*  President

The Board of Directors, in accordance with Article VI(c) of this Company's Articles of Incorporation, may from time to time distribute equitably to the holders of the participating policies issued by said Company such sums out of its earnings as in its judgment are proper.

$^{25}/_{25}$

FP-7955 KT

**State Farm**

**State Farm Fire and Casualty Company**
A Stock Company With Home Offices in Bloomington, Illinois

*2500 Memorial Boulevard*
*Murfreesboro, TN 37131-0001*

**Named Insured**

A-11-2178-FAA6          H  F

INMAN, BOSTON
865 CLINE RD
TAZEWELL TN  37879-4626

**DECLARATIONS PAGE**          AMENDED JUL 24 2014

| Policy Number | 42-BF-H751-5 |
|---|---|

| Policy Period | Effective Date | Expiration Date |
|---|---|---|
| 12 Months | JAN 5 2014 | JAN 5 2015 |

The policy period begins and ends at 12:01 am
standard time at the residence premises.

**Add'l Insured-Sections I & II**
INMAN, KATHERINE
910 W ROCHESTER AVE
MIDDLESBORO KY  40965-1441

FILED
THIS 7 DAY OF Deleg, 2015
AT 10:35 AM PM
Frances Cardwell, C & M

## HOMEOWNERS POLICY

**Automatic Renewal** - If the policy period is shown as **12 months**, this policy will be renewed automatically subject to the premiums, rules and forms in effect for each succeeding policy period. If this policy is terminated, we will give you and the Mortgagee/Lienholder written notice in compliance with the policy provisions or as required by law.

Location of Residence Premises
Same as Insured's Address

**Your policy is amended JUL 24 2014**
ADDITIONAL INSURED ADDED
OPTION AI ADDED

IPPD

JUL 29 2014

| Coverages & Property | Limits of Liability | Inflation Coverage Index: 202.0 |
|---|---|---|
| **SECTION I** | | **Deductibles - Section I** |
| A  Dwelling | $ 115,900 | All Losses 1/2%            $1,000 MIN |
|     Dwelling Extension    up to | $ 11,590 | |
| B  Personal Property | $ 86,925 | |
| C  Loss of Use | Actual Loss Sustained | |
| **SECTION II** | | |
| L  Personal Liability | $ 300,000 | |
|     (Each Occurrence) | | |
|     Damage to Property | | In case of loss under this policy, the deductibles will be applied |
|     of Others | $ 500 | per occurrence and will be deducted from the amount of the |
| M  Medical Payments to | | loss. Other deductibles may apply - refer to policy. |
|     Others (Each Person) | $ 5,000 | |

| Loss Settlement Provision (See Policy) | Endorsement Premium          NONE |
|---|---|
| A1 Replacement Cost - Similar Construction | |
| B1 Limited Replacement Cost - Coverage B | Discounts Applied: |
| | Home/Auto |
| Forms, Options, & Endorsements | Claim Record |
| Homeowners Policy                    FP-7955.KT | |
| Homeowners Policy Endorsement      FE-3530 | |
| Amendatory Endorsement             FE-2340 | |
| Jewelry and Furs $1,500 Each       Option JF | |
|   Article/$2,500 Aggregate | |
| Increase Dwlg Up to $  23,180      Option ID | |
| Ordinance/Law  10%/$  11,590       Option OL | |
| Additional Insured                 Option AI | |

—————————— Other limits and exclusions may apply - refer to your policy ——————————

**Your policy consists of this page, any endorsements**
**and the policy form. Please keep these together.**

FP-7001.6C

5161    251  I

20  N                    Prepared    JUL 29 2014

MATT COMPTON
423-626-7241

555-7029     555-7029.*  Rev. 10-2002 (e1/039tc)

1/1                    EXHIBIT "D"

Business Services Division
Tre Hargett, Secretary of State



State of Tennessee
312 Rosa L. Parks Avenue, 6th Floor
Nashville, Tennessee 37243-1102



7015 0640 0003 9560 4862



$ 08.77⁰
0004283394   JUL 14 2015
MAILED FROM ZIP CODE 37243

STATE FARM FIRE AND CASUALTY
COMPANY
ONE STATE FARM PLAZA
BLOOMINGTON, IL 61710

6382379



||||| |||| ||||| ||| |||| ||| ||||| |||| |||
22000068405ST00

# CORPORATE HDQ B-3

COOK,JASON
Alias : JOWG
Dept# : 10080383330
Dept  : CORPORATE LAW
Phone : 3097350796

Pallet #: 22B-3LAW071715071715

Carrier: #: USPS
Tracking #: 70150640000395604862
Reference #:

---ALERT INFORMATION---
Alert #:
Instructions:


---ADDITIONAL INFORMATION---


7/17/2015 10:41:46 AM